# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER ALLEN FERREIRA,<br><br>    Plaintiff,<br><br>  vs.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br><br>    Defendant. | CIVIL NO. 19-00241 JAO-KJM<br><br>ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |

## ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS

Plaintiff Christopher Allen Ferreira ("Plaintiff") appeals Defendant Andrew Saul, Commissioner of Social Security's ("Commissioner['s]") denial of his application for social security disability benefits. He asks this Court to reverse the Commissioner's decision and find him disabled and either remand his claim for the immediate payment of benefits or remand the matter for a new administrative hearing to hear vocational expert testimony about whether work exists in significant numbers that Plaintiff can perform.

For the reasons articulated below, the Court AFFIRMS in part and REVERSES in part the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this Order.

## ADMINISTRATIVE PROCEEDINGS

On February 12, 2016, Plaintiff filed an application for Supplemental Security Income ("SSI"). Administrative Record ("AR") at 237. The Social Security Administration ("SSA") denied his application. *Id*. at 137–40. Plaintiff sought reconsideration and the SSA again denied his request. *Id*. at 141–44.

At Plaintiff's request, the Administrative Law Judge ("ALJ") convened a hearing. *Id*. at 15.

On April 23, 2018, the ALJ issued his decision, AR at 15–25 ("Decision"), finding and concluding as follows:

- Plaintiff has not engaged in substantial gainful activity since April 14, 2016, his amended alleged disability onset date. *Id*. at 17.

- Plaintiff's severe impairments include: bipolar disorder, type II; alcohol abuse, in remission; cognitive disorder; history of cocaine abuse; inguinal hernia, repaired in April 2017; posttraumatic stress disorder; and degenerative changes of the cervical and lumbar spine. *Id*.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). *Id*. at 18.

- Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) "except he could occasionally perform postural activities; he could not have exposure to hazardous machinery or

unprotected heights, to include no ladders, ropes, or scaffolds; he is limited to simple and routine tasks; he is limited to a non-public environment." *Id.* at 20.

- Plaintiff has no past relevant work. *Id.* at 24.

- There are jobs existing in significant numbers in the national economy that Plaintiff can perform, based on his age, education, work experience, and residual functional capacity. *Id.*

- Plaintiff has not been under a disability. *Id.* at 25.

The ALJ's Decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review of the Decision. *Id.* at 1.

STANDARD OF REVIEW

The decision of the Commissioner must be affirmed "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific

quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed. *See Hiler v. Astrue*, 687 F.3d 1209, 1211 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." (citation omitted)); *Burch*, 400 F.3d at 679. The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

<u>DISCUSSION</u>

Plaintiff appeals the ALJ's determination that he is not disabled. To be eligible for disability insurance benefits, a claimant must demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, it may only be determined that a claimant is under a disability "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Only

disabilities existing before the date last insured establish entitlement to disability insurance benefits. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

> A five-step analysis is employed in evaluating disability claims.
>
> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; 20 C.F.R. § 404.1520. It is the claimant's burden to prove a disability in steps one through four of the analysis. *See Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citation omitted).

Plaintiff only challenges the ALJ's determinations as to steps four and five. Plaintiff agrees with the ALJ's determination that he had no past relevant work but

disagrees with the ALJ's RFC determination. Opening Br., ECF No. 19 at 5.

Specifically, Plaintiff argues that the RFC should have been more limited and

factored his psychological and physical difficulties, as well as his treating

physicians' conclusions that he could not maintain full-time work. *Id.* Plaintiff

also challenges the ALJ's conclusion that work exists in significant numbers in the

national economy that he can perform.

According to Plaintiff, two errors caused the ALJ to reach these conclusions:

(1) failure to make a proper credibility assessment, and (2) improper rejection of

the treating source's opinion that Plaintiff is unable to maintain full-time

employment and would require time off-task. Opening Br. at 6.

A.    Credibility Determination

Plaintiff contends that the ALJ made an improper credibility assessment by

failing to address most of his symptom testimony and that the ALJ's reasons for

dismissing Plaintiff's testimony were not clear and convincing. "Credibility

determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604

(9th Cir. 1989) (citation omitted); *see Greger v. Barnhart*, 464 F.3d 968, 972 (9th

Cir. 2006) ("[Q]uestions of credibility and resolutions of conflicts in the testimony

are functions solely of the Secretary." (citation omitted)); *Parra v. Astrue*, 481

F.3d 742, 750 (9th Cir. 2007). When the ALJ makes specific findings justifying a

decision to disbelieve an allegation of excess pain, and those findings are

supported by substantial evidence in the record, it is not the Court's role to second-

guess the ALJ's decision. *See Fair*, 885 F.2d at 604. The Ninth Circuit has

established a two-step analysis for determining the extent to which a claimant's

symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented
> objective medical evidence of an underlying impairment which
> could reasonably be expected to produce the pain or other
> symptoms alleged. In this analysis, the claimant is *not* required
> to show that her impairment could reasonably be expected to
> cause the severity of the symptom she has alleged; she need only
> show that it could reasonably have caused some degree of the
> symptom. Nor must a claimant produce objective medical
> evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and
> there is no evidence of malingering, the ALJ can reject the
> claimant's testimony about the severity of her symptoms only by
> offering specific, clear and convincing reasons for doing so. This
> is not an easy requirement to meet: The clear and convincing
> standard is the most demanding required in Social Security cases.

*Trevizo*, 862 F.3d at 1000 (quoting *Garrison*, 759 F.3d at 1014–15) (footnote

omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)

(identifying two-step analysis in assessing the credibility of a claimant's testimony

regarding the subjective pain or intensity of symptoms); *Vasquez v. Astrue*, 572

F.3d 586, 591 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th

Cir. 2007). That said, the ALJ need not "believe every allegation of disabling pain,

or else disability benefits would be available for the asking, a result plainly

contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair*, 885 F.2d at 603).

Credibility determinations must be made with sufficiently specific findings to allow the Court to conclude that the ALJ did not arbitrarily discredit a claimant's testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)). The following factors are relevant in reviewing an ALJ's credibility findings, and are also required by the SSA:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter*, 504 F.3d at 1040 (footnote omitted); *see Orn*, 495 F.3d at 636 (ALJs may consider the following factors in weighing a claimant's credibility: "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" (quoting *Fair*, 885 F.2d at 603) (other citation omitted)).

The ALJ opined that Plaintiff met the first step—whether Plaintiff presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged—but rejected his

testimony about the intensity, persistence, and limiting effects of his symptoms, and made no finding of malingering:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR at 21.

Plaintiff accuses the ALJ of mischaracterizing his hearing testimony and argues that the "meager discussion" of symptom testimony ignores the hearing testimony and Plaintiff's self-completed function report. Opening Br. at 15–16. The ALJ summarized Plaintiff's testimony as follows:

> [H]e ceased drinking alcohol on March 28, 2016 and confirmed that he has been sober since [April 14, 2016]. [Plaintiff] reported that he has . . . significant lower back pain. He also reported hernia surgery. [Plaintiff] also alleged psychological difficulties. He reported frustration and irritation with people. [Plaintiff] reported that he has trouble with concentration and is not good with paper work. He stated that he also has PTSD related to street fights and jail. [Plaintiff] reported paranoia and hyper-vigilance.

AR at 20. As discussed below, the ALJ offered multiple bases for declining to fully credit Plaintiff's testimony about the severity of his symptoms, which constitute specific, clear and convincing reasons to justify his adverse credibility

determination.  *See Trevizo*, 862 F.3d at 1001 (citing *Lingenfelter*, 504 F.3d at 1036).

### 1.    Medical Evidence

#### a.    Back and Hernia Issues

In determining that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms" were "inconsistent with the overall record," AR at 21, the ALJ relied in part on medical evidence.  To start, the ALJ acknowledged Plaintiff's allegation of significant back pain, but noted that "the record reflects few abnormalities or attempts at treatment."  *Id*.  He opined that Plaintiff's symptoms are under control because the record is devoid of any further attempts at treatment for back issues.  *Id*.  And as such, "back abnormalities would not interfere with the performance of medium work with the above accommodations."  *Id*.  The ALJ further relied on Plaintiff's adequate recovery from hernia surgery:  "[t]he record does not reflect ongoing complaints related to [Plaintiff's] hernia following the surgery, indicating that [Plaintiff] had a good recovery and resolution of any significant symptoms."[1]  *Id*.

---

[1] Plaintiff does not address the ALJ's determinations about his physical conditions; he focuses on the ALJ's discussion regarding his psychological impairments.  However, Plaintiff's physical conditions informed the ALJ's conclusion that Plaintiff's statements contradicted the medical and other evidence.

An ALJ may rely on "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" to find a pain allegation incredible. *Fair*, 885 F.2d at 603. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 751 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (finding permissible the ALJ's inference that Tommasetti's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("Meanel's claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received.").

At the hearing, Plaintiff's counsel conceded that there is no evidence in the record for treatment of back pain and that Plaintiff's primary disability is psychological. Plaintiff's concession lends support to the ALJ's adverse credibility determination because it confirms that the record contains discrepancies between Plaintiff's allegations of disability and his medical history. The Court therefore finds that the ALJ properly discounted Plaintiff's testimony by relying in part on a lack of treatment for his back issues and resolution of his hernia following surgery.

b.    Psychological Issues

With respect to Plaintiff's psychological challenges, the ALJ explained that Plaintiff is not as limited as he alleged. AR at 21. In particular, the ALJ focused on Plaintiff's "pretty good" mood following his commitment to sobriety. *Id.* Plaintiff told Patricia Baroody, C.T., in April 2016 that he hoped to find housing so that he could make balloon animals and do magic tricks for children again. *Id.* (citing Exhibit 17F/13). The ALJ also cited Plaintiff's comments the following day to Ms. Baroody again expressing a desire to perform for children—his former job—and his reported "pretty good" mood, along with Ms. Baroody's assessment that Plaintiff was "calm, verbally engaged, and cooperative." *Id.* (citing Exhibit 17F/14). The ALJ further cited Plaintiff's continued focus on resuming work as a performer. *Id.* In January 2017, Plaintiff told a treating source that he asked people to assist him in collecting material for his "act" and that he sought alternative means of earning money to purchase items for his "act." *Id.* (citing Exhibit 22F/19).

The ALJ additionally mentioned that Plaintiff "revealed sufficient symptom control to adapt to challenging situations." *Id.* In January 2018,[2] Plaintiff informed a treating source that he was "adaptable and flexible" in finding a

---

[2] The Decision identified the encounter as occurring in 2017, but the record reveals that it took place on January 23, 2018. AR at 1041.

solution to resolve an issue that arose while he attempted to open a bank account.

*Id.* (citing Exhibit 23F/4).

Relying on psychological evaluations from Dr. Stephen Choy, the ALJ noted

Plaintiff's significant improvement as of the alleged onset date:

> Dr. Choy reported, "This past year witnessed a remarkable
> transformation of a once hypomanic, alcoholic man I have
> known for years off and on. He recently earned his one year coin
> and is active with AA. He has been staying at the Sand Island
> Transitional Program and attending Care HI's dual diagnosis
> program. . . . Suffice it . . . to say the changes have been
> remarkable in what once seemed an impossible case of dual
> diagnosis.

*Id.* at 22 (citing Exhibit 18F/3). An updated report from Dr. Choy stated that

Plaintiff was staying at the Sand Island Shelter, running AA meetings on Saturday

nights, attending counseling twice and week, and attending church. *Id.* (citing

Exhibit 18F/1). Relatedly, the ALJ highlighted Plaintiff's leadership abilities

while in public, including taking another member of his treatment group to the zoo.

*Id.* (citing Exhibit 23F/3). Plaintiff's treating source identified him as "a good

source of support for others in the group [who gives] good feedback when

appropriate." *Id.*

Plaintiff characterizes the foregoing as isolated, trivial statements that are

not clear and convincing reasons for discounting his symptom testimony. But

Plaintiff erroneously views every discussion point as independently insufficient to

support a finding that Plaintiff could perform full-time work. *See* Opening Br. at

19 –21. The ALJ found the foregoing *collective* evidence concerning Plaintiff's physical and psychological impairments to be inconsistent with Plaintiff's statements regarding the intensity, persistence, and limiting effect of his symptoms.[3]

Despite Plaintiff's arguments to the contrary, the ALJ acknowledged Plaintiff's symptom testimony about difficulty with concentration, paperwork, and PTSD. *Id.* at 20. The mere fact that the ALJ did not discuss all of the testimony—such as Plaintiff's inability to leave his house for days—and/or discredited the testimony does not amount to error. *See Vahey v. Saul*, Civ. No. 18-00350-ACK-KJM, 2019 WL 3763436, at *23 (D. Haw. Aug. 9, 2019) ("An ALJ need not address every aspect of a claimant's testimony to find him not credible." (citations omitted)).

Plaintiff also asserts that the ALJ failed to consider his daily activities and the severity of his complaints, most notably by failing to discuss Plaintiff's function report. Plaintiff references select portions of the function report to suggest that his ability to work is far more limited than the ALJ concluded. Opening Br. at 17 (describing his limitations as cognitive difficulties, constant

---

[3] The Court declines to address the evidence cited by the Commissioner that the ALJ did not rely upon in the Decision. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (explaining that courts are constrained to review reasons asserted by the ALJ).

worry, insomnia, depression and anxiety, avoiding socializing, and needing help remembering to take medications). Yet the report also reveals that Plaintiff engaged in daily activities such as preparing meals; completing household chores; walking or utilizing public transportation when going out; shopping once a day; paying bills; handling a checking account; engaging in hobbies and interests twice a week for around an hour; and interacting with others. AR at 301–03. These self-reported capabilities directly contradict Plaintiff's symptom testimony about debilitating impairment.

While "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability," *Orn*, 495 F.3d at 639 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)), a claimant's testimony may be discredited "when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113 (citations omitted); *see Burch*, 400 F.3d at 681 (stating that a claimant's allegations may be discredited "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace"); *see also Orn*, 495 F.3d at 639 (citing *Burch*, 400 F.3d at 681; *Fair*, 885 F.2d at 603). Even in cases where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they

contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citations omitted).

Given the discrepancies in the record, some of which were created by Plaintiff, the ALJ did not err. The ALJ found that notwithstanding his impairments, Plaintiff was able to "perform for others, or engage[] in regular work activity, in a non-public environment." AR at 22. Plaintiff also led AA meetings, and attended counseling and church with regularity. *Id.* Plaintiff's ability to perform such activities and engage with others contradicted his testimony that his depression caused him to isolate himself for days and that he would be unable to manage additional responsibilities. AR at 57–59, 61. The ALJ's failure to address certain statements made by Plaintiff during his testimony does not mean he disregarded those statements. Indeed, the contradictions between those statements, Plaintiff's self-reported daily activities, and the medical and other evidence are specific, clear and convincing bases to discredit Plaintiff's allegations of impairment. Moreover, the ALJ concluded that Plaintiff's abilities and interactions demonstrated his capability to perform work at the identified RFC. Accordingly, the ALJ properly opined that Plaintiff's statements were not consistent with the evidence in the record. Where, as here, substantial evidence in the record supports the ALJ's credibility finding, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citation omitted).

B.    Opinion Evidence

Plaintiff also challenges the ALJ's treatment of the opinion evidence.  The Ninth Circuit distinguishes among the opinions of treating physicians, examining physicians, and non-examining physicians.  *See Garrison*, 759 F.3d at 1012 (citation omitted).  "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'"  *Trevizo*, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)) (alteration in original);  *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citation omitted).  When an opinion of a treating or examining doctor is uncontradicted, "an ALJ must state clear and convincing reasons that are supported by substantial evidence" to reject the opinion.  *Trevizo*, 871 F.3d at 675 (citation omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* (citations omitted).  To satisfy this burden, an ALJ must provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citation omitted).  ALJs may disregard lay testimony from "other sources" if they "give[] reasons germane to

each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citations omitted).

If a treating physician's opinion is not controlling "because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record," *Orn*, 495 F.3d at 631 (citation omitted), "it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

1.  Dr. Choy

Plaintiff argues that the ALJ should have given great weight to Dr. Choy's opinions and that because his finding that Plaintiff could not work was uncontroverted, the ALJ had to provide clear and convincing reasons to reject the finding. Opening Br. at 24. The Commissioner responds that the ALJ gave specific and legitimate reasons for weighting Dr. Choy's opinion as he did. Answering Br., ECF No. 20 at 25.

The ALJ gave little weight to Dr. Choy's (1) March 2012 and February 2016 opinions that Plaintiff could not sustain competitive work and could not maintain regular job attendance and (2) February 2018 opinion that despite his stability, Plaintiff could not work at that time due to multiple disabilities. AR at 23. The

2012 and 2016 opinions were afforded little weight because they were completed before Plaintiff's sobriety.[4] *Id.*

The ALJ likewise gave the 2018 opinion little weight because it was "not well supported or generally consistent with the overall record" and because Plaintiff regularly attended church and counseling, led an AA group, and was taking steps to regain employment as an entertainer. *Id.* Plaintiff avers that the ALJ's reasoning for weighting the opinion as he did is founded upon a mischaracterization of the record and is therefore invalid. Plaintiff claims to have attended church sporadically and relinquished his AA leadership role due to difficulty and stress. Opening Br. at 25 (citing AR at 59, 299). And according to Plaintiff, the evidence fails to demonstrate that he was pursing a career as an entertainer. *Id.* The ALJ cited to Exhibit 22F[5] but also referenced earlier discussions in his Decision. AR at 22 ("*As discussed above*, [Plaintiff] . . . is pursuing a return to working as an entertainer." (emphasis added) (citing Exhibit 22F) (other citation omitted)). Earlier in the Decision, the ALJ referenced Exhibit

---

[4] Plaintiff asked that his condition be evaluated only after he committed to abstain from alcohol consumption. AR at 22–23. Notably, Plaintiff's onset date and commencement of sobriety coincide. *See id.* at 15 (identifying April 2016 onset date); *id.* at 925 (noting that Plaintiff earned his one-year coin from AA on March 28, 2017).

[5] Exhibit 22F states: "[Plaintiff] noted he asked several people for help in trying to gain materials for his 'act[.]'" AR at 973.

17F when detailing Plaintiff's efforts to entertain children again. Exhibit 17F states: "[C]lient expressed . . . his desire to return to working with children and the hospitals and the zoo to make balloon animals and do magic tricks (client reported he had a business doing this many years ago), but that he knows no one will talk to him seriously if he smells like alcohol." AR at 904. Thus, the Court rejects Plaintiff's contention that the ALJ mischaracterized the record.

The Court nevertheless finds that the ALJ erroneously rejected Dr. Choy's opinion. First, the ALJ failed to apply the relevant factors in determining the weight that should be given to the opinion. As earlier noted, the ALJ accorded little weight to Dr. Choy's opinion that Plaintiff was unable to work due to multiple disabilities because it was "not well supported or generally consistent with the overall record." AR at 23. Although the ALJ cited Plaintiff's activities and pursuit of employment as bases for discrediting the opinion, he did not address "factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Trevizo*, 871 F.3d at 676 (citing 20 C.F.R. § 404.1527(c)(2)–(6)). This alone constitutes legal error. *See id.* Where, as here, Dr. Choy treated Plaintiff for over 17 years at the time he formulated his opinion, he had a unique perspective regarding Plaintiff's condition. *See Orn*, 495 F.3d at

633. Moreover, the nature and extent of the relationship adds significant weight to Dr. Choy's opinion. *See id.*

In addition, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Choy's opinion. Plaintiff argues that the clear and convincing standard applies because the opinion is uncontroverted, but non-examining psychiatrist Dr. Young, a State agency consultant, whose opinion the ALJ accorded some weight, opined that Plaintiff is capable of coping with a low-demand, entry-level job under certain conditions. AR at 23. Where, as here, a non-examining physician contradicted Dr. Choy's opinion, the "specific and legitimate reasons" standard applies. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("Because [the treating physician's] opinions regarding Ford's functional capacity were contradicted by the reports of two non-examining physicians, the ALJ could reject the opinions by giving 'specific and legitimate reasons' for doing so." (citation omitted)). Consequently, the ALJ was required to provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citation omitted). He failed to do so. The ALJ made a conclusory reference to Plaintiff's church and counseling attendance, AA leadership, and efforts to return to work as a performer. However, he did not summarize the facts and conflicting evidence, nor state his interpretation thereof. *See Embrey v.*

*Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

The Commissioner argues that Dr. Young's opinion, coupled with the record, reasonably supports the weight given to Dr. Choy's opinion and that Dr. Young's opinion constitutes substantial evidence upon which the ALJ could base his RFC determination. Answering Br., ECF No. 20 at 25–26. But "[t]he opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted). To serve as substantial evidence, non-treating or non-examining physicians' opinions must be "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957 (citations omitted). Here, the ALJ merely summarized Dr. Young's opinion; he did not discuss independent clinical findings, other evidence in the record, or offer findings. The Commissioner provides multiple citations to the record to corroborate the ALJ's reliance on Dr. Young's opinion. However, the Court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554

F.3d 1219, 1225 (9th Cir. 2009) (citations omitted). Accordingly, because the ALJ did not articulate specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Choy's opinion, he erred.

### 2.    Alexander Gino

The ALJ also considered evidence from Alexander Gino, Plaintiff's certified substance abuse mental health counselor but concluded that "[s]ignificant weight cannot be given to Mr. Gino's statements to the extent that they are not consistent with the medical evidence of record." AR at 22. While the ALJ identified factors to consider when evaluating evidence from non-medical sources, such as the nature and extent of the relationship and other factors tending to support or refute the evidence, he determined that Mr. Gino's statements—unidentified in the Decision—"are inconsistent with the medical evidence of record, which does not support [Plaintiff's] allegations, and inconsistent with [Plaintiff's] reported level of activity throughout the record." *Id.* The ALJ again pointed out that Plaintiff regularly attended church and counseling, led an AA group, and pursued work as an entertainer. *Id.*

Plaintiff challenges the ALJ's rejection of Mr. Gino's opinion and his classification of Mr. Gino as a non-medical source.[6] Reply Br., ECF No. 21 at 16.

---

[6] The ALJ's classification is of no consequence here. Mr. Gino is an "other source" and Plaintiff argues that the "germane reasons" standard applies.

When dealing with "other sources," the ALJ need only provide germane reasons for discrediting their opinions. *See Molina*, 674 F.3d at 1111 (citation omitted). Although inconsistency with medical evidence is a germane reason, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted), the ALJ's reasoning fell short. First, he did not identify Mr. Gino's statements that were inconsistent with the medical evidence and with Plaintiff's reported level of activity. AR at 22. Second, he did not identify the inconsistencies or explain how they conflicted with the record or Plaintiff's level of activity, except his generalized reasoning that Plaintiff attended church, led an AA group, and sought to resume work as an entertainer. *Id.* The Court thus finds that the ALJ erred in discounting Mr. Gino's opinion without offering germane reasons for doing so.

      3.    <u>Alissa Gino</u>

      Finally, Plaintiff contends that the ALJ's failure to address the progress notes of his counselor, Alissa Gino, amounts to legal error. Opening Br. at 27; Reply Br. at 16. Because the notes of Ms. Gino referenced by Plaintiff, as contained in Exhibit 24F, comprise a series of therapy notes, and not an opinion, the framework for weighting opinions is inapplicable. *See* 20 C.F.R. § 404.1513 (defining medical opinion, other medical evidence, and evidence from nonmedical sources). Moreover, ALJs are not required to discuss all of the evidence presented to them, nor discuss evidence that is not significant or probative. *See Howard ex*

*rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). Plaintiff argues that Ms. Gino's notes were significant, but he has not demonstrated why the ALJ was required to address them.

In sum, the Court AFFIRMS the Commissioner's decision as to the credibility determination because he provided clear and convincing reasons for not fully crediting Plaintiff's allegations about the intensity, persistence, and limiting effects of his symptoms. The decision is REVERSED as to the opinion evidence because the ALJ did not provide specific and legitimate reasons that are supported by substantial evidence for discounting Dr. Choy's opinion, nor germane reasons for Mr. Gino. The Court REMANDS the action for further proceedings consistent with this Order. *See Trevizo*, 871 F.3d at 682.

## CONCLUSION

As set forth herein, the Commissioner's decision denying Plaintiff's application for social security disability benefits is REVERSED. This case is REMANDED for further administrative proceedings consistent with this Order.

//

//

//

//

//

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, March 20, 2020.



Jill A. Otake
United States District Judge

CIVIL NO. 19-00241 JAO-KJM; *Ferreira v. Saul*; ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS

26